Robert **SHERIDAN**, Plaintiff,

v.

Gaspare **DiGIORGIO** et al., Defendants and Third-Party Plaintiffs,

v.

**UNITED STATES** of America, Third-Party Defendant.

No. 73–C–7.

United States District Court, E. D. New York.

March 26, 1974.

O'Leary & O'Leary, Jamaica, N. Y., for plaintiff.

Larkin, Wrenn & Cumisky, New York City, for defendants and third-party plaintiffs; William F. Larkin, New York City, of counsel.

Edward John Boyd V, Acting U. S. Atty., E. D. N. Y., for United States; George H. Weller, Asst. U. S. Atty., E. D. N. Y., of counsel.

## DECISION AND ORDER

TRAVIA, District Judge.

The instant action arose out of an automobile accident occurring in Queens, New York on December 21, 1971. The plaintiff, Robert Sheridan, was a passenger in a government owned vehicle, being driven by Robert Cooper. Both Sheridan and Cooper were federal employees working for the Food and Drug Administration. The other vehicle involved in the collision was owned by LPI Transport Corporation and was being operated by Gasper DiGiorgio in the business of Pepsi-Cola, Incorporated.

Sheridan commenced a personal injury action against DiGiorgio, LPI Transport and Pepsi-Cola in the Supreme Court of the State of New York, Kings County. The defendants in turn brought a third-party action against both Sheridan and Cooper, seeking a *Dole v. Dow* apportionment of damages.[1] On December 29, 1972, the United States Attorney, pursuant to the provisions of Title 28 U.S.C. § 2679, certified that the third-party defendant, Cooper, was acting within the scope of his employment as an employee of the United States at the time of the accident. Accordingly, the entire action was removed to this court and the United States of America was substituted as a third-party defendant in the place of Cooper.[2]

On November 9, 1973 a similar certification was made by the United States Attorney with respect to Sheridan. Accordingly, on January 8, 1974, this court issued an order upon motion dismissing Sheridan as a third-party defendant. *See* Title 28 U.S.C. § 2679(b). On that same date, this court granted the United States leave to amend its third-party answer, but denied the Government's motion for partial summary judgment.

Thereafter, the Government made application, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, to dismiss the third-party action based upon the third affirmative defense of its amended third-party answer, to wit:

"The third-party claimant fails to state a complaint upon which relief can be granted as the exclusive liability of the United States of America is under the Federal Employees Compensation Act, 5 U.S.C. § 8116(c)."

The third-party plaintiffs then filed a cross-motion, under Rules 12(f) and 56 of the Federal Rules of Civil Procedure, requesting that this court grant partial summary judgment dismissing the Government's third affirmative defense.

■ The legal issue presented to this court for resolution is whether a cause of action for indemnity or contribution exists against the United States, as a third-party defendant, where the injured plaintiff is a government employee. It is well established that a federal em-

---

1. *See* Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972).

2. Title 28 U.S.C. § 2679(d) provides in salient part:
   "Upon a certification by the Attorney General that the defendant employee was acting within the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place wherein it is pending and the proceedings deemed a tort action brought against the United States under the provisions of this title and all references thereto."
   Authority has been delegated by the Attorney General to the several United States Attorneys, under 28 C.F.R. § 15.3, to make the necessary certification.

ployee is precluded from suing the United States for injuries sustained during the course of his employment and that his avenue of redress is strictly confined to the stated benefits set up under the Federal Employees Compensation Act (hereinafter referred to as "FECA"). *See* Granade v. United States, 356 F.2d 837 (2d Cir. 1966), cert. denied, 385 U. S. 1012, 87 S.Ct. 720, 17 L.Ed.2d 549 (1967). Stated in a different manner, the question now posed is whether or not the exclusivity section of FECA[3] can be legitimately extended to revoke the consent of the United States to be sued for contribution or indemnity under the Federal Tort Claims Act.

■ The third-party plaintiffs maintain that the determination of this issue should be governed by the local law of the state where the injury occurred, namely, New York. In support of this contention, the third-party plaintiffs rely chiefly upon the United States Supreme Court's decision in United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). The *Yellow Cab* case, however, is not controlling in this particular context. That case involved an injured plaintiff who was not a federal employee. Consequently, the court never dealt with the impact of FECA upon actions brought under the Federal Tort Claims Act, which is the central issue now confronting this court. *See* Busey v. Washington, 225 F.Supp. 416, 421 (D.D.C.1964). Moreover, the Government's immunity from suit under FECA is federally created and the di-

mensions of that exemption must be measured by federal rather than state standards. *See* Newport Air Park, Inc. v. United States, 419 F.2d 342, 346–347 (1st Cir. 1969); 12 A.L.R.Fed. 616, 620 n. 7.

■ A review of the applicable federal case law, reveals an obvious conflict of authority among the various circuits on the question. *See* 12 A.L.R.Fed. 616. The third-party plaintiffs urge this court to adopt the reasoning employed in Wallenius Bremen G.m.b.H. v. United States, 409 F.2d 994 (4th Cir. 1969), cert. denied, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970) and Travelers Ins. Co. v. United States, 331 F.Supp. 189 (E.D.Pa.1971).[4] These cases are, however, representative of what might be termed a "minority viewpoint" and this court believes that the "majority approach" is far more persuasive.

Illustrative of the majority stance is Busey v. Washington, *supra*, wherein a mail carrier was injured while riding in a mail truck which struck a protruding piece of angle iron on a salvage truck. The plaintiff, who had collected FECA benefits, subsequently brought an action against the owner and operator of the salvage truck. The defendants, seeking contribution, impleaded the United States and the postal truck driver. The court held that the exclusive remedy provision of FECA prohibited third-party suits by one joint tortfeasor against the United States, as an alleged joint tortfeasor, for contribution when the injured party was a federal employee.

---

3. The exclusivity section of FECA is found in Title 5 U.S.C. § 8116(c), which reads:

   "The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation

statute or under a Federal tort liability statute."

4. *Wallenius Bremen* involved an indemnity action by a shipowner against the United States after the former had settled a claim brought by a Department of Agriculture inspector, who had fallen from a ladder while aboard the shipowner's vessel. The court in analyzing FECA's exclusivity provision, employed the *ejusdem generis* rule and construed the language "anyone otherwise entitled" to mean those individuals personally related to the federal employee. The court interpreted the phrase so as not to exclude strangers from suing the Government. This same reasoning was also employed in the *Travelers* case.

After exploring the legislative history of the exclusivity provision of FECA, the court found that:

"[T]he purpose of Workmen's Compensation Statutes such as the one herein involved, is not only to provide for employees 'a remedy which is both expeditious and independent of proof of fault, *but also for employers a liability which is limited and determinate.*' To permit contribution against the United States would not be in keeping with this purpose, inasmuch as the liability of the employer, the United States in this case, would cease to be limited and determinate." *Id.* at 423, of 225 F.Supp. (Emphasis in original).

A third-party action cannot be used as a vehicle to circumvent the statutory intent of limiting the Government's liability to the amount scheduled under FECA. If the rule were otherwise, the Government's immunity would be illusory, evaporating the instant that another wrongdoer could be found and brought in as a defendant. Thus, the United States would be forced to pay an amount in excess of its statutory obligation to the injured employee, albeit indirectly through a third-party plaintiff.

Another convincing rationale compelling the dismissal of the third-party suit here springs from the very nature of an action for contribution. Contribution was designed to obviate the inequity of permitting an injured plaintiff to select by whim or caprice a single defendant, from among several common joint tortfeasors, to shoulder the entire burden of liability. This danger is no longer present, however, where one of two joint tortfeasors is immune from suit. As Judge Coffin pointed out in his concurring opinion in Newport Air Park, Inc. v. United States, *supra,* 419 F.2d at 347 (1st Cir. 1969):

"In the case where one of the tortfeasors is immune from suit by the injured party—our case—the rationale behind contribution no longer exists, for there is no possibility of the arbitrary, fortuitous, or collusive choice of defendants, which underlies contribution. That the government may go 'scot free' may be somewhat unfair, but the unfairness stems not from the law of contribution but from the fact that the government is given immunity under section 8116(c) in exchange for strict liability for specified benefits for all injuries of its covered employees."

Therefore, the reason underlying the need for contribution is undercut in situations such as the one presented herein, where there is no liability on the part of the indemnitor to the injured party. In a sense, the Government can no longer be considered as a joint tortfeasor within the meaning of the Federal Tort Claims Act.[5] United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9th Cir.), cert. denied, United Air Lines, Inc. v. United States, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); *accord,* Wien Alaska Airlines, Inc. v. United States, 375 F.2d 736 (9th Cir.), cert. denied, 389 U.S. 940, 88 S.Ct. 288, 19 L.Ed.2d 291 (1967); *see* Madux v. Cox, 382 F.2d 119 (8th Cir. 1967); Scarbrough v. Murrow Transfer Co., 277 F.Supp. 92 (E.D.Tenn.1967); *but compare* Murray v. United States, 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968), which agrees with the proposition within the context of contribution actions, but questions the use of the same rationale in indemnity suits.

In Newport Air Park, Inc. v. United States, *supra,* a suit arose out of an aircraft collision which was caused by the joint negligence of both Newport and the Government. The widow of a federal employee killed in the crash collected

5. As the court articulated in Newport Air Park, Inc. v. United States, *supra,* 419 F.2d at 346:

"As a matter of legal principle the route to contribution must be via subrogation or assignment based upon payment. In such circumstances we would suppose that there would be nothing to be subrogated to if the other party claimed to be a joint tortfeasor, was never under liability to the injured party." (Footnotes omitted).

$8,600 in FECA benefits and subsequently recovered an additional $50,000 from Newport in settlement of her claim. Although the widow repaid the Government the FECA award,[6] the court still dismissed Newport's contribution claim against the United States. The court opined that:

"Looking at the question as one of federal law, we hold that contribution cannot be had from the government when the government was under no tort liability to the injured party. Even when the person obliged to pay was only secondarily liable, and hence entitled to full indemnity, it has been held that no right arises against the primary actor if, as the employer, he was statutorily immune from tort liability." Id., 419 F.2d at 347.

The Supreme Court's decisions in Weyerhaeuser S. S. Co. v. United States, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963) and Treadwell Const. Co. v. United States, 372 U.S. 772, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), reversing Drake v. Treadwell Const. Co., 299 F.2d 789 (3d Cir. 1962), are distinguishable from the present action in that both cases involved a legal relationship between the wrongdoers which existed independently of the accident causing the injury to the plaintiff. In Weyerhaeuser the Court's determination to permit contribution was predicated upon the long honored rule in admiralty actions of dividing damages in mutual fault collisions, which was held to be preeminent over the provisions in FECA. Similarly, in the Treadwell case there was an underly-

ing contractual agreement existing between the United States and the contractor, who had manufactured the steel tank which exploded and caused the plaintiff's injuries.[7] See Panico v. Whiting Milk Co., 335 F.Supp. 315, 317 (D.Mass.1971). By contrast, the nexus existing between the third-party plaintiffs and the Government here arises solely from the circumstances of the accident itself. There are no other connections between the parties which might provide the necessary linkage to establish an independent duty or relationship. See Slattery v. Marra Bros., 186 F.2d 134, 138–139 (2d Cir. 1951), cited in Panico v. Whiting Milk Co., supra, 335 F.Supp. at 317 and Murray v. United States, supra, 405 F.2d at 1367.

A cryptic indication of the Second Circuit's inclination to adopt the "majority approach" can be discerned from Schwartz v. Compagnie General Transatlantique, 285 F.Supp. 473 (S.D.N.Y.), aff'd 405 F.2d 270 (2d Cir. 1968). In that case, a United States immigrant inspector was injured while engaged in official business aboard the defendant's vessel. In a suit by the inspector against the shipowner, the latter sought to implead the United States for indemnity based upon an alleged breach of an implied warranty of workmanlike performance. The court dismissed the third-party action, finding that no contract existed between the litigants and that no warranty could be implied between them. Although the court did not discuss the exclusivity provision of FECA, the court did cite United Air Lines v. Wiener, supra,[8] and it concluded

---

6. See Title 5 U.S.C. § 8132.

7. It is noteworthy that the court in Busey v. Washington, supra, 225 F.Supp. at 421, found that the reversal in the Treadwell case was not a Supreme Court mandate to extend the boundaries of Weyerhaeuser beyond the narrow confines of admiralty collision cases. The Busey court thought it significant that the Supreme Court did not reverse the Third Circuit Court of Appeals with orders to reinstate the district court's ruling permitting contribution, but rather remanded the case to the district court to reconsider the case in light of Weyerhaeuser.

8. The United Air Lines case involved a mid-air collision of a commercial and a military airplane. In a suit brought by the estates of seven nonmilitary federal employees who were killed in the crash, the court held that the Air Lines was barred from suing the United States for indemnity. The basis for the decision was grounded upon the removal of the Government's tort liability under FECA. The court reasoned that any claim for contribution or indemnity in a noncontractual situation was confined to situations wherein the indemnitor was liable in tort to the injured plaintiff.

that the claim over must be dismissed because there was no underlying tort liability on the part of the Government to the injured inspector. *Id.* at 474.

Accordingly, it is

Ordered that the third-party plaintiffs' application for partial summary judgment dismissing the third affirmative defense of the third-party defendant's amended answer be and the same is hereby denied; and it is further

Ordered that the third-party defendant's application for an order dismissing the third-party action be and the same is hereby granted.